IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2580
(Summary Calendar)
_____

WILLIAM JUSTIN DELEONARDIS,

Plaintiff-Appellant,

versus

MARY WEISEMAN, Special Counsel,
Office of The Special Counsel, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-90-3768)
_____

(January 12, 1993)

Before  KING, DAVIS, and WIENER, Circuit Judges.

PER CURIAM[*]:

In this handicap discrimination case, Plaintiff-Appellant William Justin DeLeonardis appeals the grant of summary judgement in favor of Defendants-Appellees Mary Weiseman,[1] Special Counsel for the Office of The Special Counsel (OSC), et al.  Finding no

---

[*]Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."  Pursuant to that Rule, the Court has determined that this opinion should not be published.

[1] We note that Kathleen Day Koch was substituted as a party for Ms. Weiseman in the district court.  The filings with this court, however, represent Ms. Weiseman as the proper party.

reversible error in the district court's grant of summary judgment, we affirm.

I

FACTS AND PROCEEDINGS

In January 1986, DeLeonardis became a Supervisory Attorney Advisor in the Houston, Texas, office of the Social Security Administration (SSA). He served in that capacity for over four years, receiving several outstanding service awards and earning the high regard of most of his superiors.[2] In June 1990, DeLeonardis was demoted to the position of Attorney-Advisor, with a commensurate reduction in his pay level.[3]

The circumstances of DeLeonardis demotion have been the subject of this and another lawsuit, as well as several administrative actions. Our reading of the controlling law as to our review of this case leads us to conclude that a full explication of the details of DeLeonardis's demotion is not necessary. Essentially, DeLeonardis asserts that his demotion and the subsequent poor working environment that he was forced to abide resulted from the homophobic reaction of one of his superiors (Regional Chief Administrative Law Judge Richard Mueller) to the revelation that DeLeonardis is homosexual and had written (under a pen-name while off-duty) a story for a magazine for gay men. He

---

[2] The record contains affidavits of praise from at least five of the Administrative Law Judges with whom DeLeonardis served.

[3] DeLeonardis was moved from a GM-13 level to a GM-11 level.

2

asserts that the demotion violated his first amendment speech and association rights. He also alleges discrimination based on his handicapped status; he has cerebral palsy. Disagreeing, the SSA asserts that the demotion occurred because DeLeonardis mishandled the supervision of an errant employee.

As an employee of the SSA, DeLeonardis had no right to appeal his demotion to the Merit System Protection Board (MSPB) after his grievance was denied by the SSA itself. He was, however, entitled to petition the OSC to investigate his claim of a prohibited personnel practice,[4] which he did. The OSC performed an initial investigation into the circumstances of the demotion but decided not to conduct a full investigation.

At the same time that he was trying to get the OSC to investigate of his demotion, DeLeonardis continued his efforts to regain his position as a supervisor by means within the SSA. These efforts eventually produced a settlement agreement with the SSA, which was entered into in October 1991. In accordance with the agreement, the SSA changed the demotion to a "voluntary change to a lower grade," adjusted his pay to the level at which he had been compensated prior to the demotion, purged his personnel file of all documentation pertaining to the demotion, and made several personal accommodations for DeLeonardis. The agreement also contained a reservation clause in which DeLeonardis expressly reserved the right to continue the instant litigation.

DeLeonardis had filed the instant action in an attempt to

---

[4] 5 U.S.C. § 12, 23 (1988).

compel the OSC to perform a full investigation of the complaint he had filed with that agency concerning his demotion. The district court granted summary judgment in favor of the OSC, holding that the decision of the OSC not to perform a full investigation after it had performed a preliminary investigation was unreviewable. DeLeonardis timely appealed the order of the district court.

II

ANALYSIS

The OSC must "investigate the allegation [of a prohibited personnel practice] to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken," and bring correct action "whe[n] appropriate."[5] In Wren v. Merit System Protection Board, the D.C. Circuit stated:

> [W]hile the scope of an initial OSC investigation need only be extensive enough to determine whether there are reasonable grounds to believe a prohibited personnel practice is occurring, has occurred, or will occur, "[s]ome preliminary inquiry will . . . be necessary . . . to determine whether the charge warrants a thorough inquiry."[6]

Once the OSC has conducted its initial inquiry, however, the Wren court continued, "it is . . . quite clear from the statutory language and legislative history that Congress did not mean to make

---

[5] Id. §§ 1212(a)(2), 1214(a)(1)(A).

[6] 681 F.2d 867, 874 (D.C. Cir. 1982)(quoting II House Comm. on the Post Office and Civil Service, 95th Cong., 1st Sess., Legislative History of the Civil Service Reform Act of 1978, at 1496).

4

the OSC's decisions to terminate or conduct an investigation or bring a proceeding before the Board reviewable on the merits."[7]

We have recognized and approved the Wren court's reasoning that an employee's right to obtain judicial review of the OSC's decision not to pursue a complaint is "limited to [the question of] whether the OSC discharged its duty to investigate the complaint."[8] We agree with our colleagues of the D.C. Circuit that when the OSC decides to terminate an investigation that it began pursuant to a complaint, the decision is not reviewable.

The district court correctly stated the law applicable to the facts of the instant case:

> In this case the OSC conducted a preliminary investigation of plaintiff's allegations, referred his handicap discrimination to the EEOC, and concluded that further inquiry was unnecessary because the evidence did not indicate that prohibited personal practices had occurred. Plaintiff does not contend that OSC failed to investigate his complaint; he contends that the investigation was inadequate. Under these facts the court cannot order OSC to conduct an additional investigation of plaintiff's claims, nor will the court second guess OSC's decisions to abandon or defer claims following its preliminary investigation.

DeLeonardis nevertheless insists that courts are allowed to look behind the agency's decision to terminate an investigation when, as he claims it did here, the agency applies the incorrect

---

[7]Id. at 875 n.9 (citing Senate Comm. on Governmental Affairs, 95th Cong., 2d Sess., Markup Sess. on S.2640 (Civil Service Reform Act of 1978), at 85-86 (unpublished transcript of May 22, 1978); House Comm. on Post Office and Civil Service, 95th Cong., 2d Sess., Markup Meetings on H.R. 11280 (A Bill to Reform the Civil Service Laws), at 46-47 (Comm. Print 1978)).

[8]Towers v. Horner, 791 F.2d 1244, 1246 n.14 (5th Cir. 1986)(citing Wren, 681 F.2d at 875 n.9).

legal standard in deciding to terminate the investigation.[9]  But DeLeonardis fails to recognize, or at least to admit, that to allow him to succeed on this argument we would have to vitiate the clearly established rule that we do not look behind substantive OSC determinations to terminate investigations.  We are neither willing nor authorized to do so.

The OSC is also correct in asserting that DeLeonardis's appeal has been mooted by the settlement agreement that he entered into with the SSA.  The OSC's argument is straight-forward and unassailable.  It points out that there would be nothing for the OSC to investigate if it were ordered to reopen DeLeonardis's case.  This is so, it notes, as a result of the expunging of all records of the demotion pursuant to the provisions of the settlement agreement.  We agree that the effect of the plain language of that

_____

[9] DeLeonardis asserts that in terminating the investigation, the OSC improperly presumed a nexus between his off-duty activities and his on-duty performance.  In its letter informing him of the termination of the investigation, the OSC stated:
> When you attempted to take action against [an] employee [whom you had allowed to obtain information about your lifestyle and writing], the employee used this information as an affirmative defense.  While your action against the employee was ultimately sustained by higher management, the agency did have to spend resources and time reviewing the allegations the employee made against you.  Thus, your conduct off-duty did have an adverse impact on the agency, and we find no further basis for inquiry into your allegations of a violation of 5 U.S.C. § 2302(b)(10).

(Emphasis added).  Although we agree with DeLeonardis that the nexus recognized by the OSC was improper (the fact that the agency had to expend resources and time investigating specious claims)) that arose because of his off-duty lifestyle and activities))of one of DeLeonardis's subordinates cannot be used as a nexus in this situation), forcing the OSC to conduct the investigation because of this error would be a reversal of the agency's discretion on substantive grounds.

6

agreement was the deletion from DeLeonardis's file of all data that the OSC might investigate.

DeLeonardis urges that the OSC's argument is no more than an attempt to use the settlement agreement, to which the OSC was not a party, to "shirk its statutory duty to protect Appellant's constitutional rights." Continuing, he asserts that "the settlement of his discrimination claim for less than full reinstatement with back pay at the GM-13 level does not moot his constitutional claims for full reinstatement with back pay." The fatal problem with his argument is that he asks us to require the OSC to do something that he has rendered it unable to do))investigate an incident that he has contracted to have expunged from the SSA's files. Although it is clear that DeLeonardis has not been made whole by the settlement))he is no longer a supervisor with the SSA))he seeks in this lawsuit to compel an agency to do something that he has made impossible.

III

CONCLUSION

Although the record in this case demonstrates rather serious unfairness in the demotion of DeLeonardis, it is a wrong that is beyond the authority of this court to redress. We cannot review the substantive decision of the OSC to discontinue an investigation for lack of cause once it has commenced one in response to an employee's request. We also note in passing that even if we were to compel the OSC to reinstate and perform a full investigation, it

7

would be placed in the impossible situation of reviewing a record expunged of any evidence of the potential wrongdoing.  The district court's grant of summary judgment is

AFFIRMED.